UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

K & J ENTERPRISES, LLC                                              PLAINTIFF

v.                                              Civil No. 3:18-cv-00209-GHD-RP

THE CITY OF OXFORD, MISSISSIPPI                                     DEFENDANT

**MEMORANDUM OPINION**

On October 9, 2010, this Court heard testimony and argument on a motion for preliminary injunction [Dkt. 5] filed by Plaintiff K & J Enterprises. K & J sought to enjoin the enforcement of the ordinance passed by the City of Oxford requiring bars and restaurants within Oxford to implement certain security measures. At the conclusion of the hearing, the Court found that K & J had not established the necessary elements to secure a preliminary injunction because they had not shown a substantial likelihood of success on the merits. The Court ordered the motion be denied. [Dkt. 20] The Court now explains in further detail the basis for that ruling.

### Background

**1. History**

Known to the local Oxonians and others simply as "the Square", the area surrounding the Lafayette County Courthouse is home to numerous businesses including law offices, banks, retailers, restaurants, and bars. On evenings and weekends, those bars and restaurants become a popular destination for the University Mississippi student body and anyone else who wishes to enjoy the City's nightlife.

Because of the Square's popularity, the City must devote significant resources to ensuring the safety of the public on evenings and weekends. This is especially true on eventful weekends in

Oxford, such as football games, when thousands of people—many of whom are consuming alcohol—can be present on the Square, most of them concentrated in the four-block area that features most of the Square's bars.

The City has sought a way to reduce the number of violent incidents, accidents, and disorderly conduct that occurs at night on the Square. To that end, in October of 2017, Oxford Chief of Police Joey East presented a safety assessment to the Oxford Board of Aldermen that identified several areas of concern involving the Square's nightlife. These included the size of the crowd in public at the time the bars closed, excessive and underage drinking, and pedestrian safety. *See* OPD Safety Assessment [13-1] and October 3, 2017 Minutes [13-2].

In May of 2018, the Board was presented with a first draft of what eventually became Ordnance 2018-17. The proposed ordinance created a "Downtown District" in Oxford consisting of an area west of the Lafayette County Courthouse that featured most of the bars on the Square. In this district, bars and restaurants would be required to, among other things, maintain security guards, implement video surveillance, use electronic means to prevent underage drinking, maintain lines forming outside the business, and apply for event permits with the City on certain occasions. *See* May 15, 2018 Minutes, at 7 [6-1].

On September 4, 2018, the Board met again to consider a revised version of the ordinance. *See* September 4, 2018 Minutes [6-3] at 4.[1] The revised version contained two noticeable differences. First, it did away with the security guard and event permit requirements. Second, it would apply not just to businesses in the Downtown District, but to any business in Oxford that was required to have a permit allowing it to sell alcohol for on-premise consumption. At the meeting

---

[1] It was at this meeting that the metes and bounds of the Downtown District were first reduced to writing. At a later September 13, meeting the Board affirmed the boundaries of the Downtown District. September 13, 2018 Minutes at 1–2 [6-4].

2

the City approved the ordinance. *Id.* The ordinance was to go into effect for cities in the "Downtown District" on October 5, 2018, 30 days later. *Id.* The ordinance would go into effect for the other business in Oxford with on-premise retailer permits on January 1, 2019. According to the minutes, the Board proposed the later effective date for business outside the Downtown District because they had shorter notice that they would be covered by the ordinance.

On September 14, K & J, which owns and operates the Library Sports Bar located on the Square, filed a notice of appeal challenging the ordinance in the Circuit Court of Lafayette County. The notice of appeal asserted that numerous provisions of the ordinance were preempted by state law, that the City's decision to pass the ordinance was arbitrary and capricious and its findings were not supported by evidence, that the ordinance deprives K & J of procedural and substantive due process, and that the ordinance violated the United States Constitution.

On September 25, the City removed to this Court premising removal on federal question subject matter jurisdiction. K & J then filed the present motion seeking a preliminary injunction.[2]

## 2. Provisions

The ordinance as adopted applies "all businesses in the City which are required by local or State law to obtain an on-premise permit for the sale, distribution and consumption of alcoholic beverages and/or beer and light wine." ordinance 2018-17 at 1 [13-4]. The ordinance contains the following requirements that Plaintiff's object to:

First, the ordinance requires that covered businesses maintain security cameras that monitor a variety of locations, including all entry/exit doors and common areas. *Id.* § 14-100.5. The ordinance provides that Chief of Police may enter the premises and inspect the cameras and a

---

[2] K&J also sought a temporary restraining order preventing the ordinance from going into effect on October 5. The City eventually agreed to postpone the effective date until October 15, giving this Court the opportunity to hold a hearing before it went into effect and obviating the need for a TRO. Second,

3

minimal amount of video footage as necessary to ensure the cameras are in working order. *Id.* § 14-100.5.b.

Second, the ordinance requires the businesses store the video footage for at least 7 days. The ordinance provides that other than the minimum amount of footage required to be presented during inspections to determine the cameras are working, businesses shall not be required to provide the footage to law enforcement absent a lawful order for such production. *Id.* §14-100.5.g

Third, the ordinance requires that businesses use "Electronic Age Verification Devices" to verify patrons' ages when accessing age restricted areas of the business and when purchasing alcoholic beverages. *Id.* § 14-100.6.

Fourth, the ordinance requires that where patrons are awaiting to enter the business, the business must maintain a line, the location of which must be approved by the Chief of Police. *Id.* § 14.-100.4

Fifth, the ordinance requires that covered businesses maintain a photo ID and contact information for each employee. *Id.* § 14-101.[3]

The ordinance makes it a misdemeanor to violate any provision, imposing a fine from $250 to $1,000 and/or a jail sentence of up to six months. *Id.* § 14-104.

## Jurisdiction

An initial question is whether this Court has subject matter jurisdiction. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.

---

[3] The ordinance also requires covered businesses maintain security and evacuation plans and that businesses train their employees on those plans. *Id.* § 14-102. Further, the ordinance requires that certain event venues provide an event notice containing information about that event. *Id.* § 14-103. K & J does not specifically object to those provisions.

4

Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987). The City of Oxford listed, as a basis for their removal, federal question jurisdiction under 28 U.S.C. § 1331. Presumably this was because K & J alleged in its notice of appeal, that the ordinance violated its substantive and procedural due process rights and that it violated the United States Constitution.

It is clear that if K & J contends that the ordinance violates the United States Constitution, then federal question jurisdiction exists. *See City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 159, 118 S. Ct. 523, 527, 139 L. Ed. 2d 525 (1997) (holding that actions that contains both federal constitutional and state administrative challenges to municipal decisions may be removed to federal district court).

Even though this was not a traditional "complaint" its reference to the United States Constitution is sufficient to invoke federal question jurisdiction. In *Freemon v. Burlington Broadcasters, Inc.,* a local zoning board issued a radio tower permit to a radio station that had already obtained an FCC license. *Freeman v. Burlington Broadcasters, Inc.,* 204 F.3d 311, 315 (2d Cir. 2000). Homeowners complained that the tower interfered with numerous other radio devices and as a result, the zoning board issued a citation to the radio station. *Id.* However, the zoning board determined that its authority to enforce the permit was preempted by federal law. *Id.* The homeowner's appealed that decision to a state court. There, the radio station removed to federal court. *Id.*

The Second Circuit Court of Appeals considered whether the federal district court had removal jurisdiction. It reasoned this question was important because this administrative appeal differed from a traditional lawsuit (like the one instituted in *City of Chicago*) in two ways. *Id.* at 317.

First, the action was instituted not by a complaint but by a notice of appeal. *Id.* Second, the document initiating the action did not set forth a cause of action, but rather a "Statement of Questions". *Id.*

The Second Circuit reasoned that these distinctions were ultimately unimportant. As the court stated:

> Although a "Statement of Questions" does not present a claim that may be examined to determine if it arises under federal law in quite the same manner as a "complaint" asserting a cause of action, this technical difference also provides no basis for rejecting federal subject matter jurisdiction. The well-pleaded complaint rule is concerned with the existence of a federal question on the face of the document invoking a state court's jurisdiction, not whether that document bears the label "complaint."

*Id.*

Applying that reasoning to the case at hand, federal question jurisdiction is clear. K & J asserts in their notice of appeal that the ordinance violates both its procedural and substantive due process rights and the United States Constitution. This establishes a federal question and enables removal to this Court.

**Preliminary Injunction**

To obtain a preliminary injunction, K & J must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) the injunction will not disserve the public interest. *Neal v. Fed. Bureau of Prisons*, 76 F. App'x 543, 545 (5th Cir. 2003) (citing *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418–420 (5th Cir. 2001)). K & J must establish all four elements; the "failure to prove any one of them will result in a denial of the motion." *Id.* (citing *Enter. Int'l, Inc. v. Corporacion Estatal*

6

*Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)). In the instant case, K & J cannot show a likelihood of success on the merits.

"To show a likelihood of success, plaintiffs must at least present a prima facie case, but need not prove that they are entitled to summary judgment. *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 585 (E.D. La. 2016), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017). "To assess the likelihood of success on the merits, the court looks to standards provided by the substantive law." *Id.* (citing *Sepulvado v. Jindal*, 729 F.3d 413, 418 (5th Cir. 2013)).

K & J advances three reasons why the ordinance is likely invalid: (1) the ordinance as a whole is preempted by state law because it regulates more than allowed under state law; (2) specific provisions of the ordinance are pre-empted by state law; and (3) the bifurcated effective date is arbitrary and capricious.[4][5]

**1. Preemption of the ordinance as a whole**

K & J first contends that the ordinance seeks to regulate on premise permit holders in a way impermissible by state law. According to K & J because state statutes provide the State Tax Commission with the broad regulatory authority over the manufacture, distribution, sale, and possession of alcohol, municipalities may not regulate such permit holders in a way that impairs their ability to sell alcohol. *See* Miss. Code Ann. §§ 67-1-37; 67-3-23.

The Mississippi Home Rule Statute provides that:

---

[4] K & J also contended that the ordinance's original October 5th effective date was procedurally effective. The City agreed not to implement the ordinance until October 15, rendering that challenging moot.

[5] The Court notes that, as discussed above, it is convinced it has jurisdiction because K & J's notice of appeal indicates that it will challenge the constitutional validity of the ordinance. Thus, this Court has original jurisdiction over the constitutional claims and supplemental jurisdiction over the state law claims. K & J, however, has tendered little, if any, specific federal constitutional arguments to this Court as a reason for why it may succeed on the merits. Thus, this Court is currently in the unusual position of evaluating this case solely under state law at this stage.

> The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have the power to adopt any orders, resolutions or ordinances with respect to such municipal affairs, property and finances which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi, and shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances.

Miss. Code. Ann. § 21-17-5. However, the city cannot "adopt any valid ordinance, the effect of which would be nullification of the State's statutes dealing with the same misdemeanor, such as the possession of beer made legal for personal consumption." *City of Amory v. Yielding,* 34 So.2d 726, 728 (1948). "It is well established that in any conflict between an ordinance and a statute, the latter must prevail." *Watkins v. Navarrette,* 227 So.2d 853, 855 (Miss. 1969).

Mississippi alcohol laws provide that "[m]unicipalities may enforce such proper rules and regulations for fixing zones and territories, prescribing hours of opening and of closing, and for such other measures as will promote public health, morals, and safety, as they may by ordinance provide." *Id.* § 67-3-65.

The Court must consider then, whether this ordinance is likely a valid exercise of municipal authority under the Home Rule statute and § 67-3-65 and whether it conflicts with some other state law.

Two cases are instructive. First, in *Maynard v. City of Tupelo,* the City of Tupelo passed an ordinance prohibiting the consumption of alcohol in businesses between the hours of midnight and 7:00 a.m. *Maynard v. City of Tupelo,* 691 So. 2d 385, 387 (Miss. 1997). The plaintiff challenged the ordinance, arguing that it was expressly prohibited by Miss. Code Ann. § 67-1-7 and generally preempted by the State's extensive foray into alcohol regulation. The Court held that the ordinance was not prohibited by §67-7-17 which permitted counties and cities the "local option"
8

of permitting the sale, distribution, and possession of alcohol, because there was no clear expression by the legislature to regulate the "consumption" of alcohol with the statute. *Id.* at 388. The Court also held that the entire area of alcohol regulation was not preempted, as evidenced by the existence of § 67-3-65 itself. *Id.*

Next, in *Collins v. City of Hazelhurst,* the Mississippi Supreme Court confronted an ordinance that prohibited on-premises holders from allowing persons under the age of 21 to entering their establishments where beer was consumed. *Collins v. City of Hazlehurst*, 709 So. 2d 408, 409 (Miss. 1997). Again, the court upheld the ordinance finding it to be a valid under § 65-3-65. *Id.* at 412.

Applying this to the case at hand, the Court finds that the ordinance here is likely valid under § 65-3-65. As the court in *Collins* noted, the statute permits city regulations that not only address where and when alcohol may be sold, but also permits " '*such other measures as will promote public health, morals, and safety, as they may by ordinance provide*' " *Id.* (quoting Miss. Code Ann. § 65-3-65) (emphasis in original). This ordinance appears to do just that by verifying that no minors purchase alcohol, ensuring that security camera footage is available of any incident which may occur in the bar, and keeping the lines outside the business orderly.

Nor is there indication that this ordinance conflicts with any state statute concerning permitting. ordinances are preempted by state law only when there is a "direct conflict between the state statute and local ordinance." *Delphi Oil, Inc. v. Forrest Cty. Bd. of Supervisors*, 114 So. 3d 719, 723 (Miss. 2013). While the ordinance applies to those businesses that hold an on-premise retailer permit, it does not affect the permit in anyway. A violation of the ordinance does not revoke the permit. The ordinance does not make illegal anything that a business does by virtue of the permit, such as selling alcohol that is to be consumed on the premise. Accordingly, the Court finds

that K & J has not established a substantial likelihood of successfully challenging the ordinance on this ground.

## 2. Preemption of specific provisions

K & J also identifies four specific provisions that it argues are preempted by specific state law.

It first argues that the requirement that businesses use an "Electronic Age Verification Device" to ascertain a patrons age is in conflict with Miss. Code Ann. 67-3-69(4) which states:

> A person who sells any beer or wine to a person under the age of twenty-one (21) years shall not be guilty of a violation of Section 67-3-53(b) if the person under the age of twenty-one (21) years represents himself to be twenty-one (21) years of age or older by displaying an apparently valid Mississippi driver's license containing a physical description consistent with his appearance or by displaying some other apparently valid identification document containing a picture and physical description consistent with his appearance for the purpose of inducing the person to sell beer or wine to him.

K & J does not clearly explain how the ID scanner requirement is preempted by the statute. First, the provision in question is actually an affirmative defense to an alleged violation of section 67-5-53(b). There is nothing in the statute that a permit holder is required to do (other than not sell alcohol to minors). Second, it appears obvious that if a patron provided an ID to the business to be scanned by the ID scanner then they have represented themselves to be at least 21 "by displaying an apparently valid Mississippi driver's license containing a physical description consistent with his appearance or by displaying some other apparently valid identification document." In other words, by complying with the ordinance, a permit holder will always have the affirmative defense available to them.

Second, K & J argues that the ordinance provisions requiring security cameras and inspection by the Chief of Police are preempted by Miss. Code Ann. § 67-1-37(k) which grants the Alcohol Beverage Control Division of the Mississippi Department of Revenue the right to "inspect,

or cause to be inspected, any premises where alcoholic liquors intended for sale are manufactured, stored, distributed or sold, and to examine or cause to be examined all books and records pertaining to the business conducted therein."

Again, K & J does not explain how the ordinance conflicts with this statute. Granting ABC the right to inspect a permit holder's business does not exclude inspection by all other entities. Under K & J's reading of the statute, the state health inspector or local fire marshal would be prohibited from entering and inspecting the business.

Third, K & J argues that the provision that requires businesses to maintain photo ID, contact information, and job description for its employees conflicts with state regulations that require retailers to maintain certain business records and information about whether certain employees have been convicted of felonies. *See* 35 Code Miss. R. 35-II-2.06 & 35 Code Miss. R. 35-22-3.09. Again, there is no explanation why the ordinance conflicts with these regulations. K & J does not explain how compliance with the ordinance precludes compliance with the regulations.

Finally, K & J argues that the statute imposes vicarious criminal liability by holding the permittee responsible for violations of its employees and that this is impermissible both because it is unconstitutional and because state statutes in this area impose only civil and regulatory penalties on employers for acts of their employees.

With respect to the constitutional argument, K & J does not advance any argument for why the ordinance is unconstitutional. To the extent that K & J wishes to challenge to the enforcement of any criminal penalties of law on the basis that it will impose vicarious liability on K & J, the Court does not think that issue is presently ripe for review. An issue is not ripe if "further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473

U.S. 568, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985)). It is impossible for this Court to determine whether the City seeks to impermissibly impose vicarious criminal liability on any individual without the City first seeking to punish a specific person for specific conduct of another.

With respect to the regulatory argument, K & J here, as with other arguments, seems to argue that the City's ordinance seeks to regulate in an area where the State has already enacted a broad regulatory scheme, and therefore the City's ordinance is impermissible. The Mississippi Supreme Court has already held that the "entire area relating to the regulation of alcohol" is not preempted by "the extensive regulation of this area by the Legislature." *Maynard*, 691 So. 2d at 388

### 3. Bifurcated Effective Date

Finally, K & J contends that the bifurcated effective date of the ordinance where the Downtown District businesses would be required to comply by October 15 and the rest of the City businesses would be required to comply by January 1, 2019 was both arbitrary and capricious and discriminatory.

To the extent that K & J argues an equal protection violation (and K & J does not present any argument on that point), K & J does not show that it is a part of a suspect class that warrants a heightened level of scrutiny; thus, the "legislation incurs only the minimum 'rational-basis' review applicable to general social and economic legislation." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366, 121 S. Ct. 955, 963, 148 L. Ed. 2d 866 (2001). Here, it appears there was a rational basis for the separate effective dates. The City had been discussing at public meetings imposing the ordinance on businesses near the Square since October 2017. It wasn't until the summer of 2018 that the City considered imposing the requirements on all permit holders in the City. Thus, it appears there was a rational need to give those businesses a longer amount of time in which to obtain the necessary equipment to comply with ordinance.

For that same reason, the bifurcated effective date is not an arbitrary and capricious exercise of municipal power. Under Mississippi law, a court reviews the application of a municipality's legislative authority under the "arbitrary and capricious" standard. *Chandler v. City of Jackson Civil Serv. Comm'n*, 687 So. 2d 142, 143 (Miss. 1997). An act is "arbitrary" when "it is not done according to reason or judgment, but depending on the will alone." *Bay St. Louis Cmty. Ass'n v. Comm'n on Marine Res.*, 808 So. 2d 885, 890 (Miss. 2001) (citing *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370 (Miss.1998)). An act is "capricious" when it is "done without reason, in a whimsical manner, implying either lack of understanding or a disregard for the surrounding facts and settled controlling principles." *Id.* (citing *Burks*, 708 So.2d at 1370). "A holding which is supported by substantial evidence cannot be arbitrary and capricious." *Miss. Bureau of Narcotics v. Stacy*, 817 So.2d 523, 526 (Miss. 2002). The initial drafts of the ordinance specified that they would only apply to the Downtown District. There is substantial evidence supporting the bifurcated effective date.

### Motion to Stay

K & J finally asks that, if this Court finds a preliminary injunction is not warranted, it issue a stay pending an appeal. A motion for stay pending is considered under the same four factors as a motion for preliminary injunction, including the likelihood of success on the merits. *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761, 173 L. Ed. 2d 550 (2009). "It is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (citing *Sofinet v. INS*, 188 F.3d 703, 707 (C.A.7 1999)). Because this Court does not find that that K & J has not made a sufficient showing of success on the merits, the motion to stay is denied.

## Conclusion

For these reasons, the Court finds that K & J has not established a substantial likelihood of success on the merits. Accordingly, they are not entitled to a preliminary injunction prohibiting enforcement of the ordinance or a stay pending appeal.

This the 11th day of October, 2018.

                                                             SENIOR U.S. DISTRICT JUDGE